# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02039-CMA-NYW

YOURAS ZIANKOVICH,

    Plaintiff,

v.

BRYON M. LARGE, and
JESSICA E. YATES,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court for recommendation on *pro se*[1] Plaintiff Youras Ziankovich's ("Plaintiff" or "Mr. Ziankovich") "Memorandum of Law in Support of the Fourth Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Be Issued" (the "Motion" or "Fourth Motion for TRO"), filed January 23, 2019. *See* [#48]. This court considers the Motion pursuant to 28 U.S.C. § 636(b) and the Memorandum dated January 23, 2019 [#51]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion and associated briefing, the record, and applicable law, this court respectfully RECOMMENDS that the Fourth Motion for TRO be DENIED.

---

[1] Though proceeding *pro se*, Plaintiff alleges that he is an attorney licensed to practice law in the state of New York. [#1 at 2]. As such, this court does not afford Plaintiff's pleadings and filings a liberal construction. *See Committee on the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007); *Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 720 (10th Cir. 2014).

**BACKGROUND**

Plaintiff commenced this action on August 24, 2017. [#1]. The Complaint alleged that Plaintiff's primary residence and one of his business offices was located in Colorado, and stated that this "is an action for declaratory relief commenced pursuant to 28 U.S.C. § 2201 and in accordance with the Rule 57 of the Federal Rules of Civil Procedure." [#1 at 2]. Plaintiff seeks declaratory relief that Defendants Bryon M. Large and Jessica Yates[2] (collectively, "Defendants"), both of whom are legal counsel within the Colorado Office of Attorney Regulation Counsel, had no authority to initiate an attorney disciplinary action against Plaintiff, because Plaintiff is not and has never been licensed in the state of Colorado; does not practice before Colorado state courts and/or agencies; and only practices federal immigration law in the State pursuant to 8 C.F.R. § 292.1(a)(1). [*Id.*]; *see also* [#14-1]. Plaintiff argued that Defendants lack jurisdiction to initiate disciplinary proceedings under the Colorado Supreme Court's attorney regulations, as he only practices in federal court and is subject only to New York's attorney regulations as a licensed New York attorney. *See* [#14-1 at 3-6]. Plaintiff contended that then-pending disciplinary action, Case No. 17PDJ037, posed an imminent threat of danger and irreparable harm, because he may be required to disclose sensitive client information that may also subject him to discipline in New York, and that any disciplinary sanctions imposed may negatively affect his reputation. [*Id.* at 6-7].

On August 31, 2017, Plaintiff filed his First Motion for TRO seeking to enjoin the disciplinary action pending in state court. [#5]. The undersigned then had the case redrawn to a District Judge pursuant to Local Rule 40.1(c)(2)(a). *See* [#6]. The

---
[2] Jessica Yates replaced James Coyle as Defendant in this action. *See* [#56; #57].

presiding judge, the Honorable Christine M. Arguello, then referred the First Motion for TRO to the undersigned Magistrate Judge on September 6, 2017. [#9]. Before addressing the merits of the first Motion for TRO, however, this court issued an Order to Show Cause directing Plaintiff to clarify the basis for federal subject matter jurisdiction over this action. *See* [#11 at 3].

Plaintiff filed his Amended Complaint on September 10, 2017, which this court also construed as his Response to the Order to Show Cause. *See* [#12]. The Amended Complaint indicates that Plaintiff invokes this court's federal question jurisdiction under 28 U.S.C. § 1331, and asserts several new claims against Defendants pursuant to 42 U.S.C. § 1983 for violations of his First, Fifth, and Fourteenth Amendment rights, as well as a claim for violations of the Commerce Clause, art. I, § 8, cl. 3 of the United States Constitution. *See* [*id.* at 5-6]. Plaintiff requests declaratory relief. [*Id.* at 5]. Given Plaintiff's Amended Complaint, this court issued a Recommendation to deny as moot Plaintiff's First Motion for TRO, *see* [#13], which Judge Arguello adopted on October 5, 2017, *see* [#20]. Plaintiff filed his Second Motion for TRO on September 14, 2017. [#14].

Defendants entered their appearance on September 7, 2017. *See* [#10]. Pursuant to the executed summonses, Defendants were to file their answer or responsive pleading to Plaintiff's Complaint [#1] on or before September 15, 2017. *See* [#4]. On September 25, 2017, Defendants filed a Motion to Dismiss [#18], and on October 5, 2017, Defendants filed a Response to the Second Motion for TRO [#19]. This court recommended denying without prejudice Mr. Ziankovich's Second Motion for TRO and dismissing this action without prejudice pursuant to *Younger v. Harris*, 401

3

U.S. 37 (1971), given the ongoing state disciplinary proceedings. *See* [#21]. Judge Arguello adopted the Recommendation in full, and dismissed Plaintiff's Amended Complaint without prejudice on October 31, 2017. *See* [#23; #24].

Following Judge Arguello's denial of his post-judgment motion, *see* [#29], Plaintiff appealed this matter to the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"). *See* [#30]. On December 26, 2018, the Tenth Circuit reversed and remanded the dismissal of Mr. Ziankovich's Amended Complaint because, in the interim, the state disciplinary proceedings had terminated, and thus *Younger* abstention was no longer appropriate. *See* [#36]. That same day, Plaintiff filed his Third Motion for TRO [#38], which Judge Arguello struck given that the Tenth Circuit had yet to issue its mandate, *see* [#47]. Mr. Ziankovich also filed Motions for Entry of Default as to Defendants, but default did not enter because the court did not have jurisdiction to act on the motions before the Tenth Circuit's mandate issued and because Defendants had filed a Motion seeking an abeyance of its response obligations to the Third Motion for TRO. *See* [#46]. The Tenth Circuit issued its mandate on January 23, 2019. *See* [#49].

Plaintiff filed the instant Motion on January 23, 2019. *See* [#48]. Plaintiff asserts that on June 20, 2018, following a hearing, the presiding disciplinary judge issued an Amended Opinion and Order finding that Mr. Ziankovich had violated several Colorado Rules of Professional Conduct warranting sanctions. *See* [*id.* at ¶¶ 14, 19-20; #48-5]. Plaintiff appealed that determination to the Colorado Supreme Court on or about July 9, 2018, *see* [#48 at ¶ 21], and the presiding disciplinary judge granted Plaintiff's motion to stay the imposition of sanctions pending his appeal, *see* [*id.* at ¶¶ 22-23]. According to Plaintiff, Defendants twice moved to lift the stay, and the presiding disciplinary judge

lifted the stay on October 8, 2018, and later issued an Order Notice of Suspension on October 31, 2018. *See* [*id.* at ¶¶ 24, 26-27]. Plaintiff alleges he moved from Colorado and shut down his Colorado law practice. *See* [*id.* at ¶¶ 9, 25].

Defendants have since responded in opposition to the Fourth Motion for TRO. *See* [#55]. They argue that the court should deny the Motion for several reasons: (1) Plaintiff's request for injunctive relief is now moot because Plaintiff abandoned this request, presumably when the Colorado Supreme Court upheld the presiding disciplinary judge's sanctions on February 1, 2019; (2) Plaintiff failed to follow the procedural requirements of Rule 65 of the Federal Rules of Civil Procedure; and (3) Plaintiff failed to satisfy his heavy burden demonstrating an entitlement to injunctive relief. *See generally* [*id.*]. Although Plaintiff has not filed a Reply, the time for doing so has expired, and this court concludes that it is appropriate to consider the Motion presently. *See* D.C.COLO.LCivR 7.1(d). Given the issues before the court, this court finds that an evidentiary hearing is not necessary, and I therefore consider the Parties' arguments below.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 65 authorizes the court to enter preliminary injunctions and issue temporary restraining orders. Fed. R. Civ. P. 65(a), (b). "When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2951 (3d ed.) Because Defendants have notice of the Fourth Motion for TRO, and,

5

indeed, filed a Response, the court treats the Motion as a motion for preliminary injunction.

Courts consider a preliminary injunction an extraordinary remedy. *See, e.g., Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). Thus, the right to such relief must be "clear and unequivocal." *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)). A party seeking preliminary injunctive relief must satisfy four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Id.* at 1257.

The primary goal of a preliminary injunction is to preserve the pre-trial status quo. "Status quo" is defined to be the last uncontested status between the parties that preceded the controversy until the outcome of the final hearing. *See Schrier v. University of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005). Therefore, courts view the following types of injunctions with caution: (1) preliminary injunctions that alter the status quo; (2) preliminary injunctions that require the nonmoving party to take affirmative action ("mandatory preliminary injunctions"); and (3) preliminary injunctions that give the movant all the relief it would be entitled to if it prevailed in a full trial.[3] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (per curiam)). Movants who seek a disfavored injunction must demonstrate a

---

[3] Here, granting Mr. Ziankovich's Fourth Motion for TRO would effectively grant him all the relief he seeks as if he prevailed at trial.

6

*substantial* likelihood of success on the merits, as well as a heightened showing of the other three elements. *Id.* (citing *O Centro*, 389 F.3d at 980). *See also Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (the movant must show that the factors "weigh heavily and compellingly" in his or her favor). The court may grant a disfavored injunction only if the moving party demonstrates that the "exigencies of the case require extraordinary interim relief," and satisfies the heightened burden. *RoDa Drilling*, 552 F.3d at 1209 (citing *O Centro*, 389 F.3d at 978). "The determination of whether an injunction is mandatory as opposed to prohibitory can be vexing," but the Tenth Circuit has explained that a mandatory injunction affirmatively requires the non-moving party to act in a particular way. *Schrier*, 427 F.3d at 1261. Whether to issue a preliminary injunction lies in the sound discretion of the trial court. *See RoDa Drilling*, 552 F.3d at 1208 (citations omitted).

**ANALYSIS**

**I.     Mootness**

Mootness is a threshold issue as federal court jurisdiction depends on a live case or controversy—without a live, concrete controversy, the court cannot consider the plaintiff's claim(s) no matter how meritorious. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010); *cf. S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (noting that prudential mootness applies in circumstances that are "so attenuated that conditions of prudence and comity for coordinate branches of government counsel the court to stay its hand," as in when the plaintiff seeks an injunction against the government). The inquiry focuses on whether the court's determination of the issues will have "some effect in the real world," which is

especially true in actions for prospective relief. *Wyoming v. U.S. Dep't of Argic.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (internal quotation marks omitted). In the context of preliminary injunctions, "where the effective time period of the injunction has passed or where the act sought to be enjoined has occurred," the preliminary injunction becomes moot. *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015) (internal citations and quotation marks omitted).

Defendants first argue that Mr. Ziankovich's Fourth Motion for TRO is moot, because the state disciplinary proceedings concluded on February 1, 2019, when the Colorado Supreme Court affirmed the presiding disciplinary judge's imposition of sanctions. *See* [#55 at 3]; *see also* [#52-3 (Order of Colorado Supreme Court affirming the presiding disciplinary judge)]. Defendants continue that Plaintiff's Response to their Motion to Dismiss makes clear that Mr. Ziankovich seeks only declaratory relief, *see* [#54 at ¶¶ 2, 15, 17], and thus there is nothing for this court to enjoin, *see* [#55 at 3]. This court respectfully agrees.

Plaintiff has not filed his Reply in support of his Fourth Motion for TRO and therefore does not address this contention, but the Motion indicates that this action is one "for declaratory relief, which shall effectively bar a discipline action commenced by [Defendants] . . . against Plaintiff[.]" [#48 at ¶ 1]. Indeed, Plaintiff's prayer for relief seeks a "Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Be Issued against Defendants, which effectively stay the proceeding pending against him while this action is pending." [*Id.* at p. 7]. Thus, I interpret Mr. Ziankovich's Motion as requesting that this court enjoin the underlying state disciplinary proceedings while this federal action proceeds.

But as Defendants note, the Colorado Supreme Court recently affirmed the presiding disciplinary judge's imposition of sanctions. See [#52-3]. Indeed, Mr. Ziankovich's Response to Defendants' Motion to Dismiss seems to concede that this suit is one "for declaratory relief only" as "to the findings of facts by this Court." [#54 at ¶¶ 1, 15, 17]. Nor is it clear from Plaintiff's Motion or filings that he seeks to enjoin the Order and Notice of Suspension issued by the presiding disciplinary judge on October 31, 2018. See [#48 at ¶ 27]. It therefore appears that the action to be enjoined has occurred, rendering the Motion moot. See Fleming, 785 F.3d at 445.

## II.  Merits

To the extent Plaintiff's Fourth Motion for TRO is not moot, Defendants contend that the Motion is both procedurally and substantively deficient. See [#55 at 3]. While this court agrees that the Motion fails to comply with the affidavit and notice requirements under Rule 65(b)(1) of the Federal Rules of Civil Procedure governing temporary restraining orders, this deficiency is not fatal to Plaintiff's request for a preliminary injunction. Cf. Williams v. BAC Home Loans Servicing, No. 10-CV-01805-MSK, 2010 WL 3025553, at *1 (D. Colo. July 30, 2010) (finding that pro se plaintiffs must comply with the procedural requirements under Rule 65(b)(1)). Nevertheless, this court agrees that Mr. Ziankovich fails to make the substantive showings necessary for a preliminary injunction, namely, a substantial likelihood of success on the merits. I therefore focus exclusively on this first factor. See Johnson & Johnson Vision Care, Inc. v. Reyes, 665 F. App'x 736, 747 (10th Cir. 2016) ("Because we conclude that the district court didn't abuse its discretion in concluding that the Manufacturers are unlikely to

succeed on the merits of their claims, it is unnecessary to address the remaining factors of the preliminary injunction standard.").

1. **Substantial Likelihood of Success on the Merits**

Defendants argue that Mr. Ziankovich cannot demonstrate a substantial likelihood of success on the merits because his Amended Complaint fails to state a plausible claim for relief. *See* [#55 at 4].[4] Specifically, Defendants contend that they may regulate out-of-state attorneys providing legal services to Coloradoans; that Plaintiff's factual allegations fall short of the plausibility standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)"; that "Plaintiff's claims are not cognizable as a matter of law"; and that issue and claim preclusion foreclose Plaintiff's claims. *See* [*id.*]. For the following reasons, I conclude that Mr. Ziankovich fails to demonstrate a substantial likelihood of success on the merits.

At bottom, Mr. Ziankovich predicates his Fourth Motion for TRO on his belief that the State of Colorado cannot regulate his ability to practice immigration law in the United States District Court for the District of Colorado. *See* [#48 at ¶¶ 19-22]. Doing so, Plaintiff argues, violates the Supremacy Clause of the United States Constitution. *See* [*id.* at ¶¶ 20-29]. Plaintiff contends that Defendants do not have jurisdiction over him, and thus the state disciplinary proceedings violate his constitutional rights. *See* [*id.* at ¶¶ 30-35]. I respectfully disagree.

---

[4] Defendants purport to incorporate by reference their entire Motion to Dismiss [#52], *see* [#55 at 4]; to do so properly, however, Defendants "must specifically identify which portions of the prior pleading are adopted therein." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 216 (D. Mass. 1995) (internal quotation marks omitted). Thus, while this court acknowledges the overlap in arguments, it will not specifically address the Motion to Dismiss. Rather, per Judge Arguello's referral, this court will issue a separate Recommendation on the Motion to Dismiss at a later date.

To start, Mr. Ziankovich again relies on the Supreme Court of the United States' decision in *Sperry v. State of Fla. ex rel. Florida Bar*, 373 U.S. 379 (1963). There the Supreme Court considered whether the Florida Bar could enjoin a "practitioner registered to practice before the United States Patent Office . . . [that] has not been admitted to practice law before the Florida or any other bar" from practicing before the United States Patent Office in Florida. *See Sperry*, 373 U.S. at 381-82. While acknowledging that prosecution and preparation of patent applications for others constituted the practice of law and that Florida had "a substantial interest in regulating the practice of law within the State," *id.* at 383, the Supreme Court explained that state law must yield when incompatible with federal legislation, *see id.* at 384. Because Congress explicitly authorized the Commissioner of Patents to regulate the conduct of attorneys and nonlawyers representing clients before the United States Patent Office, the Supreme Court held

> by virtue of the Supremacy Clause, Florida may not deny to those failing to meet its own qualifications the right to perform the functions within the scope of the federal authority. A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give the State's licensing board a virtual power of review over the federal determination that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.

*Id.* at 385 (footnotes and internal quotation marks omitted).

Mr. Ziankovich likens his situation to that in *Sperry*. But as Judge Arguello has already held, Plaintiff's reliance on *Sperry* is inapposite. *See* [#29 at 6-7]. Plaintiff argues that 8 C.F.R. § 292.1(a)(1) governs the practice of immigration law, with 8 C.F.R. § 1003.102 governing attorney conduct, and thus the State of Colorado cannot

11

regulate his ability to practice immigration law in federal court. *See* [#48 at ¶¶ 19-29]. Judge Arguello explained,

> 8 C.F.R. § 292.1(a)(1) is an immigration regulation from the Department of Homeland Security which provides that "[a] person entitled to representation may be represented by . . . [a]ttorneys in the United States. Any attorney as defined in [8 C.F.R. § 1.2]." "Attorney" is in turn defined in 8 C.F.R. § 1.2 as "any person who is eligible to practice law in, and is a member in good standing of the bar of, the highest court of any State . . . of the United States, . . . and is not under any order suspending, enjoining, restraining, disbarring, or otherwise restricting him or her in the practice of law." (Emphasis added.) This regulation, unlike the ones in *Sperry* (37 C.F.R. §§ 1.31, 1.341 (1963)), therefore expressly contemplates state regulation of attorneys practicing immigration law in federal courts. By its own terms, the regulation implies that states have "important state interests" in regulating such attorneys.

[#29 at 7-8 (emphasis in original) (footnote and case citation omitted)]. This court sees no reason to disagree with Judge Arguello or to find otherwise.

Further, the Court of Appeals for the Ninth Circuit ("Ninth Circuit") considered and rejected similar arguments in *Gadda v. Ashcroft*, 377 F.3d 934, 943 (9th Cir. 2004). In *Gadda*, the plaintiff argued that the Supreme Court of California did not have authority to disbar him because he practiced exclusively in the immigration or federal courts of California. *See id.* at 944. The Ninth Circuit rejected this contention because "[b]eyond merely leaving room for supplementary state regulation, the immigration regulations *condition* an attorney's ability to practice in immigration court on the attorney's good standing as a member of the bar of a state court." *Id.* at 945 (emphasis in original). The Ninth Circuit continued that the "immigration regulations expressly allow for supplementary state regulation[,] . . . promote reliance on and cooperation with the states, territories, and federal courts, [and] . . . do[] not occupy the field of discipline for immigration attorneys." *Id.*; *see also id.* at 945-46 (noting that the Attorney General's

12

interpretation of the applicable immigration regulations highlighted "the necessary cooperation between the federal immigration disciplinary process and that of the states"). Thus, this court is not persuaded by Plaintiff's assertions that the immigration regulations preempt Colorado laws governing attorney conduct akin to the federal legislation in *Sperry*.

Relatedly, I find misplaced Plaintiff's reliance on *In re Poole*, 22 F.3d 618, 620 (9th Cir. 2000), *In re Desilets*, 291 F.3d 925, 927-28 (6th Cir. 2002), and *Baylson v. Disciplinary Board of Supreme Court of Pennsylvania*, 975 F.2d 102, 111 (3d Cir. 1992). The Ninth Circuit in *In re Poole* considered a bankruptcy trustee's challenge to an out-of-state attorney's collection of legal fees associated with a bankruptcy petition filed in the United States Bankruptcy Court for the District of Arizona, and whether the term "applicable law" in 11 U.S.C. § 101(4)[5] meant the Arizona Supreme Court's rules governing the practice of law in Arizona. *See In re Poole*, 222 F.3d at 620-22. The trustee argued that because the out-of-state attorney was not licensed to practice law in Arizona, he was not an attorney under "applicable law" entitled to compensation. *See id.* at 620, 622. In rejecting the trustee's challenge, the Ninth Circuit noted that "practice before federal courts is not governed by state court rules," and distinguished *Sperry* because the State of Arizona had not imposed discipline on the out-of-state attorney nor charged him with the unauthorized practice of law. *See id.* at 622. Rather, the Ninth Circuit explained that Congress has the constitutional authority to establish laws governing bankruptcies, and therefore state law could not provide "authority to impose

---

[5] 11 U.S.C. § 101(4) reads: "The term 'attorney' means attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law." (emphasis added).

federal discipline," i.e., disbarring an attorney from the federal bar. *Id.* at 622 (emphasis added).

The Sixth Circuit in *In re Desilets* encountered the same issue and relied heavily on the Ninth Circuit's reasoning. *See* 291 F.3d at 927-29 (discussing *In re Poole*, 222 F.3d at 620, 622). The Third Circuit held that while the out-of-state attorney ("Mr. Rittenhouse") was not licensed in Michigan, he was properly admitted to the bar of the United States District Court for the Western District of Michigan, and therefore was an attorney as defined by 11 U.S.C. § 101(4). *See id.* at 929-31 (stating that the state could not dictate which attorneys could practice before the federal courts). And while the State Bar of Michigan had charged Mr. Rittenhouse with the unauthorized practice of law, *In re Desilets* (like *In re Poole*) is distinguishable because the State Bar of Michigan sought to enjoin Mr. Rittenhouse from practicing in federal court. *See id.* at 927, 930-31. No such situation exists here.

Finally, in *Baylson*, the Third Circuit held that a state rule of professional conduct requiring "a federal prosecutor to obtain prior judicial approval before serving a grand jury subpoena on an attorney where the attorney would be asked to testify about past or present clients" fell outside the rule-making authority of the federal district court and violated the Supremacy Clause of the United States Constitution because it conflicted with Rule 17 of the Federal Rules of Criminal Procedure. *See Baylson*, 975 F.2d at 104, 111-12. But as discussed above, Plaintiff provides no compelling argument that Colorado's rules governing the practice of law impermissibly conflict with federal immigration regulations. And this court agrees with Judge Arguello that the federal

14

immigration regulations "expressly contemplate[] state regulation of attorneys practicing immigration law in federal courts." [#29 at 7-8].

Based on the foregoing, this court concludes that Plaintiff fails to demonstrate a substantial likelihood of success on the merits. Accordingly, Plaintiff fails to satisfy his heavy burden on the instant Motion. *See Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776-79 (10th Cir. 2009) (affirming the denial of a preliminary injunction where the movant failed to demonstrate a likelihood of success on the merits).

## CONCLUSION

Therefore, for the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1) Plaintiff's Fourth Motion for TRO [#48] be **DENIED**.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

| DATED: March 8, 2019 | BY THE COURT: |
|---|---|
| | /s/ Nina Y. Wang |
| | Nina Y. Wang |
| | United States Magistrate Judge |

---

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).